UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DANIEL LOREN JENKINS,

    Plaintiff,

    v.

NURSE ZAVALA, DOROTHY WETTLAUFER, MS. CLARK, H. ROSSI, K. THOMPSON, J. BUGHER, WARREN ROBERTS, JENNE MCKIBBEN, MICHAEL DAY, and SHANNON O'FALLON,

    Defendants.

Case No. 3:23-cv-01201-YY

OPINION AND ORDER

YOU, Magistrate Judge.

*Pro se* plaintiff Daniel Jenkins brings this action against Oregon Department of Corrections ("ODOC") employees Brandy Zafala, Dorothy Wettlaufer, Cindy Clark, Harry Rossi, Kaycie Thompson, Warren Roberts, and Joe Bugher; Oregon Health Authority ("OHA") employees Jenne McKibben and Michael Day; and Oregon Department of Justice ("ODOJ") employee Shannon O'Fallon (collectively, "defendants").[1] Am. Compl. 9-10, ECF 17. In 2021, Oregon hosted a lottery called *Take Your Shot, Oregon!* ("TYSO") to encourage Oregonians to

---

[1] Where the parties have spelled the names of any defendants differently, the court applies the spellings used in defendants' filings. Mot. Summ. J. 5-6, ECF 31.

1 – OPINION AND ORDER

receive the COVID-19 vaccine. McKibben Decl. ¶ 5, ECF 33. Entry was automatic for any Oregon resident "whose vaccination was entered into [OHA's] vaccine registry at any time prior to the drawing deadline." *Id.*, Ex. 1 at 7. To be eligible for a prize, winners needed to have an Oregon address and a phone number included in the registry, as winners were contacted by phone. *Id.* ¶ 10.

Plaintiff, who was in the custody of ODOC at the Two Rivers Correctional Institute ("TRCI"), asserts that he was denied entry into TYSO because he "observed blank entry fields for his individual institutional address and institutional phone number" on his vaccination record. Am. Compl. 5, ECF 17. Plaintiff claims this constituted a deprivation of his Fourteenth Amendment rights to equal protection and due process, and brings this 42 U.S.C. § 1983 action against defendants. *Id.* at 2. Defendants have filed a motion for summary judgment, ECF 31, which is granted for the reasons stated below.

## I.    Legal Standard

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citing Fed. R. Civ. P. 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id*. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id*. at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu*, 198 F.3d at 1134 (citation omitted).

**B.      42 U.S.C. § 1983**

42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal citation and quotation marks omitted). Section 1983 liability "arises only upon a showing of personal participation by the defendant," acting under color of state law, that deprived the plaintiff of a constitutional or federal statutory right. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Federal courts hold a *pro se* litigant's pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987); *see Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (*per curiam*) (a document filed *pro se* "is to be liberally construed"; a plaintiff need only give the defendant fair notice of the claim and the grounds on which it rests) (citation omitted). "However, a liberal interpretation of a civil rights compliant may not supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). In addition, *pro se* pleadings may not receive the benefit of every conceivable doubt, but only to reasonable factual inferences in the plaintiff's favor. *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974).

**II.    Discussion**

Defendants argue they are entitled to summary judgment because plaintiff cannot establish an equal protection claim, a due process claim, and any personal participation by defendants sufficient to support liability under §1983. Defendants also contend that they are entitled to qualified immunity. Mot. Summ. J. 6, ECF 31.

In his response, plaintiff does not address all of defendants' arguments; he responds only to the equal protection claim and introduces a new breach of contract claim. *See* Resp. 5-11, ECF 60. Some courts have treated a party's failure to respond to a motion as a concession on the merits. *Lykins v. Hohnbaum*, No. 3:01-cv-00063-JO, 2002 WL 32783973, at *3 (D. Or. Feb. 22, 2002) (finding plaintiff conceded dismissal of a claim on motion for summary judgment by not addressing it); *Ward v. Nat'l Entm't Collectibles Ass'n, Inc.*, No. 2:11-cv-06358-MMM-CW, 2012 WL 12885073, at *10 (C.D. Cal. Oct. 29, 2012) (holding that by failing to oppose defendants' motion for summary judgment on damages, plaintiff abandoned the right to seek such damages); *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1115 (N.D. Cal. 2010)

("[P]laintiff fails to address this issue in her opposition brief and apparently concedes that she may not proceed on this claim. Accordingly, the court grants summary judgment in favor of defendants as to this claim."); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it. Therefore, summary judgment is appropriate."). Even so, to fully address the issues, the court reviews each claim on its merits.

### A.    Equal Protection Claim

The Equal Protection Clause is a guarantee that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The essence of that guarantee is that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). To prevail on an equal protection claim under § 1983, the plaintiff must plead and prove either "the defendants acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class," *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)), or that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational relationship for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff asserts a "class-of-one" equal protection claim, alleging that "approximately 1280 [adults in custody] housed at TRCI did participate in the contest while [plaintiff] was excluded." Resp. 9, ECF 60. To prevail on a "class-of-one" claim, a plaintiff must show that the defendant (1) intentionally (2) treated the plaintiff differently than other similarly situated

individuals, (3) without a rational basis. *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011). Here, plaintiff's claim fails as he cannot establish any of the three required elements.

First, plaintiff has not shown that any of defendants' actions or omissions were intentional. After learning about TYSO from a newspaper article announcing the winner, plaintiff alleges he met with ODOC defendants Zafala and Wettlaufer. Am. Compl. 5, ECF 17. Plaintiff claims that, in that meeting, he was shown "ALERT IIS[2] and [he] observed the blank entry fields for his individual institutional address and institutional phone number." *Id.* Separately, plaintiff wrote to TRCI's Public Information Officer to inquire why inmates were not included in the lottery pool. Rossi Decl., Ex. 2 at 5, ECF 32. Defendant Thompson responded to plaintiff, stating that "Department of Corrections Adults in Custody were entered into the lottery, however none of them won." *Id*. Not satisfied with this response, plaintiff alleges that he continued his investigation by speaking with or sending communication to the other ODOC defendants—Clark, Bugher, and Roberts. Am. Compl. 6, ECF 17. Plaintiff alleges that, throughout his investigation, defendants "engaged in a campaign of denial, coverup and obstruction in order to impede plaintiff's investigation." *Id.* at 9.

Yet nothing in the record shows that any of the defendants acted intentionally to discriminate against plaintiff. His complaint history at ODOC reflects the many grievances he filed against ODOC staff regarding TYSO. *See* Rossi Decl., Ex. 1 at 1, 4, ECF 32; *Id.*, Ex. 2 at 2-4, 7-8, 10, 21-23, 38-40, 45-47, ECF 32. The evidence also shows that each grievance was reviewed and responded to by ODOC employees. *Id.*, Ex. 2 at 1, 6, 9, 12, 16, 20, 25-26, 33, 37, 43-44. In their responses, ODOC employees explained to plaintiff that TYSO "is outside of

---

[2] Alert IIS (Immunization Information System) is Oregon's statewide immunization registry that consolidates immunization information into one reliable source. McKibben Decl. ¶ 4, ECF 33.

ODOC jurisdiction," (*Id.* at 6) and that phone numbers were not required to be entered in ALERT ISS (*Id.* at 20, 37).

As for the OHA and ODOJ defendants, plaintiff alleges they "attempted to manufacture the false premise that plaintiff's exclusion [from TYSO] was based on a lack of a contact phone number[.]" Am. Compl. 8, ECF 17. But like the allegations against ODOC defendants, plaintiff offers no evidence that OHA and ODOJ defendants intentionally excluded him from the lottery or that they fabricated an excuse for his exclusion. Instead, consistent with ODOC's response to plaintiff's grievances, ODOJ likewise responded to plaintiff and explained that ODOC "was not required to provide phone numbers when entering COVID-19 vaccination information [in] ALERT ISS." Rossi Decl., Ex. 2 at 41, ECF 32.

Second, plaintiff has not established that he was treated differently than other similarly situated individuals. Plaintiff contends that "1,280 [adults in custody] housed at TRCI participated in the lottery contest." Am. Compl. 7, ECF 17. But plaintiff has presented no evidence that other adults in custody were included in the lottery. Instead, plaintiff makes vague and conclusory allegations that there is "highly relevant and damning evidence," *id.*, and that he had provided defendants "with enough evidence to go forward with re-opening discovery." Resp. 9, ECF 60. Without actual evidentiary support, these allegations are insufficient to show a genuine dispute of material fact.

Lastly, plaintiff has not shown that the phone number requirement for TYSO entrants lacks a rational basis. Defendants maintain that there was "a legitimate state interest in including only individuals with phone numbers in the ALERT IIS data extract for the TYSO drawing." Mot. Summ. J. 8, ECF 31. "Individuals needed to have phone numbers to be included in the data extract, because winners for the drawing were contacted by phone." McKibben Decl. ¶ 10, ECF

7 – OPINION AND ORDER

33. Plaintiff offers no contrary argument suggesting that this rationale is arbitrary or unrelated to a legitimate state interest. In sum, because plaintiff fails to establish any of the three elements for a "class of one" claim, his equal protection claim fails as a matter of law.

    **B.**    **Due Process Claim**

To assert a violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate that (1) the plaintiff was deprived of a constitutionally protected liberty or property interest, and (2) constitutionally insufficient procedural protections accompanied the deprivation. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . [The person] must, instead, have a legitimate claim of entitlement to it." *Id.* at 1192. Property interests, of course, are not created by the Constitution. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*; *see also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

Plaintiff asserts that defendants violated his due process rights by depriving him of the "right to participate in the contest." Am. Compl. 9, ECF 17. Defendants point to *Mazzarino v. Massachusetts State Lottery Comm'n*, 616 F. Supp. 3d 118 (D. Mass. 2022), and *Hatch v. Sharp*, 919 F.2d 1266 (7th Cir. 1990), to argue that participating in a lottery is not a constitutionally protected interest. Mot. Summ. J. 9, ECF 31. In *Mazzarino*, a civilly committed plaintiff claimed he was denied the opportunity to participate in the state lottery open to vaccinated individuals due to a rule that prohibited detainees from registering. 616 F. Supp. 3d at 130. The court

8 – OPINION AND ORDER

dismissed his due process claim, holding that the ability to enter a state-sponsored lottery is not a fundamental right. *Id.* at 132. Similarly, in *Hatch*, an inmate alleged his due process rights were violated when he was denied permission to participate in the state lottery via mail subscription. 919 F.2d at 1268. The Seventh Circuit found no liberty interest was involved, as the rules did not require that inmates be allowed to play the lottery, leaving participation to the discretion of prison officials. *Id.* at 1270.

Here, TYSO rules stated that there was "no guarantee that any person will be entered or win a prize." Skaro Decl., Ex. 1 at 15, ECF 34. Its Limitation of Liability stated:

> The State of Oregon is not liable for losses, damages, or injuries associated with a person's participation in [TYSO] or failure to win a prize or be accurately entered into any of the drawings. Participation is voluntary and there is no guarantee that any person will be entered or win a prize.
>
> . . .
>
> It is possible a person may be eligible but, through technical issue, human error, or other reason, the person was not included in the list of eligible entries provided to the Lottery. Neither the Lottery, nor the Oregon Health Authority, nor any other state agency are liable for such errors, and such person is not entitled to a prize or any remedy.

*Id.* These terms, while not explicitly barring inmates from participation, effectively limit any entitlement to participate or win. This aligns with *Hatch* and *Mazzarino*, where participation in similar state lotteries was not guaranteed and, therefore, not a constitutionally protected liberty or property interest.

Furthermore, even if plaintiff had a protected fundamental right to participate in TYSO, he was afforded sufficient procedural protections. *See Hudson v. Palmer*, 468 U.S. 517, 534 (1984) (holding that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the

9 – OPINION AND ORDER

Fourteenth Amendment if a meaningful postdeprivation remedy for the loss" is available, such as the prison grievance system or state tort process). ODOC had a prison grievance system that plaintiff utilized on multiple occasions. From August 2021 to December 2022, plaintiff submitted six grievances. *See* Rossi Decl., Ex. 2 at 2-4, 7-8, 10, 21-23, 38-40, 45-47, ECF 32. Plaintiff appealed those grievances on four separate occasions. *Id.* at 13-15, 17-19, 27-32, 34-36. Each grievance and appeal was responded to by ODOC and ODOJ personnel. *Id.* at 5-6, 9, 12, 16, 20, 25-26, 33, 37, 41, 43-44. The record, therefore, shows that the prison grievance process afforded plaintiff multiple procedural protections to raise and address his concerns. Because plaintiff was deprived of neither a constitutionally protected interest nor adequate procedural protections, he fails to establish a genuine issue of material fact supporting a due process violation.

### C. Personal Involvement

To establish a cognizable claim under § 1983, a plaintiff must demonstrate causation by showing that a particular defendant engaged in "an affirmative act, participat[ed] in another's affirmative act, or omit[ted] to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007). The inmate must "set forth specific facts as to each individual defendant's" causal role in the alleged constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). "Sweeping conclusory allegations will not suffice to prevent summary judgment." *Id*.

Defendants argue that plaintiff's allegations "fall short of the kind of personal involvement required for his equal protection and due process claims." Mot. Summ. J. 10, ECF 31. Plaintiff claims that defendants Zafala and Wettlaufer showed him ALERT IIS on the

computer, where plaintiff observed that the phone number and address entries were blank. Am. Compl. 5, ECF 17. His claims against defendants Thompson and Rossi arise from their responses to plaintiff's grievances concerning his exclusion from the lottery. *Id.* at 5-6. As to the remaining ODOC defendants—Clark, Bugher, and Roberts—plaintiff claims he either spoke with them or sent communications to them during his inquiry about his exclusion from the lottery. *Id.* at 6. Regarding the OHA and ODOJ defendants—McKibben, Day, and O'Fallon—plaintiff alleges they attempted to "manufacture the false premise that plaintiff's exclusion was based on a lack of a contact phone number," while engaging in "a campaign of denial, coverup and obstruction" to impede his investigation. *Id.* at 8-9.

Even assuming that participation in TYSO constituted a constitutional right, none of these actions by defendants demonstrate personal involvement in the alleged deprivation of that right. There is no evidence that the ODOC defendants had any role in conducting or administering the lottery. The Oregon State Lottery promulgated the rules that governed the TYSO drawing and the Oregon Immunization Program gathered the data for the lottery. McKibben Decl. ¶¶ 7, 9, ECF 33. Moreover, plaintiff's allegation that ODOC and OHA employees "engaged in a campaign of denial, coverup, and obstruction" is without any evidentiary support and is precisely the type of sweeping conclusory allegation that the Ninth Circuit has held insufficient to prevent summary judgment. *See Leer*, 844 F.2d at 634.

### D.   Qualified Immunity

Notwithstanding plaintiff's constitutional claims, defendants assert they are entitled to qualified immunity. Mot. Summ. J. 11, ECF 31. "Qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Gordon v. County of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "In § 1983 actions,

qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (citations and internal quotation marks omitted). Qualified immunity generally protects discretionary acts by officials. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If a plaintiff either fails to show the official's conduct violated a constitutional right or that the right was not clearly established, then the official is entitled to qualified immunity. *Lacey v. Maricopa Cnty.*, 649 F3d 1118, 1131 (9th Cir. 2011), *on reh'g en banc*, 693 F.3d 896 (9th Cir. 2012).

Here, plaintiff has not shown (1) that defendants' conduct violated a constitutional right, or (2) that the alleged right—to participate in a state lottery—is clearly established. Courts considering similar claims have held that participation in a state lottery is not a fundamental or constitutionally protected right. *See Mazzarino*, 616 F. Supp. 3d at 132; *Hatch*, 919 F.2d at 1270. Accordingly, defendants are entitled to qualified immunity.

### E.    Breach of Contract Claim

A district court need not address allegations raised for the first time in response to a motion for summary judgment if the plaintiff's "pleadings did not provide sufficient notice of those allegations." *Pickern v. Pier 1 Imports (U.S.), Inc.,* 457 F.3d 963, 965 (9th Cir.2006).

In his response, plaintiff raises a contract claim for the first time, asserting that (1) TYSO constituted a unilateral contract, in which the offer was made when the Governor publicly announced the lottery on May 21, 2021, and (2) defendants breached this contract. Resp. 5-7, 10-11, ECF 60. But such claims were not included in plaintiff's original or amended complaint. Furthermore, this court's order from July 24, 2025, stated that "[i]if plaintiff wishes to seek leave to file a second amended complaint, he shall file a motion for leave to do so within 21 days of

this order." ECF 69. Plaintiff failed to seek leave within that timeline. Thus, the court need not address the breach of contract issue.

**ORDER**

Plaintiff has not established viable claims for the deprivation of his Fourteenth Amendment rights to equal protection or due process. Additionally, defendants are entitled to qualified immunity. Therefore, defendants' Motion for Summary Judgment (ECF 39) is granted and this case is dismissed.

DATED January 2, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge